T. RANDOLPH CATANESE, ESQ., State Bar No. 110308
DAVID Y. YOSHIDA, ESQ., State Bar No. 272578
DOUGLAS R. HUME, ESQ., State Bar No. 191923
**CATANESE & WELLS, A LAW CORPORATION**
31255 Cedar Valley Drive, Suite 213
Westlake Village, California, 91362
Telephone: 818-707-0407
Facsimile: 818-707-1161

Attorneys for Plaintiffs
FRIEDA MAE ROGERS f/k/a
FRIEDA ROGERS ROEN;
and PREMIER TRUST, INC.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

| | |
|---|---|
| FRIEDA MAE ROGERS f/k/a FRIEDA ROGERS ROEN; and PREMIER TRUST, INC., a Nevada corporation, as Trustee of the FRIEDA M. ROEN RESULTING TRUST u/a/d July 19, 1934;<br><br>        Plaintiffs,<br><br>        vs.<br><br>WILMINGTON TRUST COMPANY, a Delaware corporation; and, WILMINGTON TRUST INVESTMENT ADVISORS, INC., a Maryland corporation;<br><br>        Defendants.<br>_____ | Case No.<br><br>**COMPLAINT FOR:**<br><br>**(1) NEGLIGENCE;**<br>**(2) BREACH OF FIDUCIARY DUTY AS TRUSTEE;**<br>**(3) CONSTRUCTIVE FRAUD AS TRUSTEE;**<br>**(4) FINANCIAL ELDER ABUSE; and,**<br>**(5) VIOLATION OF THE U.S. INVESTMENT ADVISERS ACT OF 1940, AS AMENDED.**<br><br>**DEMAND FOR JURY TRIAL** |

1

COMPLAINT

# COMPLAINT

Plaintiffs FRIEDA MAE ROGERS f/k/a FRIEDA ROGERS ROEN (hereinafter "ROGERS") and PREMIER TRUST, INC. (hereinafter "PREMIER") hereby allege for their complaint against Defendants WILMINGTON TRUST COMPANY (hereinafter "WILMINGTON") and WILMINGTON TRUST INVESTMENT ADVISORS, INC. (hereinafter "WTIA") on personal knowledge as to Plaintiffs' own activities, and on information and belief as to the activities of others, as follows:

## The Parties

1. Plaintiff ROGERS is an individual resident of the state of California, County of Stanislaus therein. ROGERS was previously known as Frieda R. Roen. By Order of the Superior Court for the County of Stanislaus made on September 21, 2016, ROGERS had her name legally changed back to her former name "Frieda Mae Rogers."

2. Plaintiff PREMIER is a corporation formed under the laws of the state of Nevada. PREMIER offers independent fiduciary services for trusts and estates.

3. A trust document known as the *Reformed and Restated Trust Agreement of the Trust Created by Katherine Stuart Stibbs Under Trust*

2

COMPLAINT

*Agreement Dated July 19, 1934, as Divided for the Benefit of the Descendants of Mary Stuart Rogers* was created and confirmed by Court Order on November 10, 2008 (hereinafter "1934 Restated Trust Agreement").   Pursuant to the 1934 Restated Trust Agreement there was created *The Frieda M. Roen Resulting Trust* (hereinafter "Roen Resulting Trust"). The "Trustee" of the 1934 Restated Trust Agreement was WILMINGTON at all times material herein.   (This occurred by reason of the 1934 Restated Trust Agreement at the Third Article, Section 9 and further by letter designation of ROGERS made on December 12, 2008, given to WILMINGTON.)  Plaintiffs are informed and believe and on that basis allege that WILMINGTON hired, consulted with and retained the services of WTIA related to all management and investment decisions of the Roen Resulting Trust at all times from and after the creation of the Roen Resulting Trust until the date when WILMINGTON ceased acting as the Trustee over the Roen Resulting Trust.  On January 13, 2015, ROGERS replaced WILMINGTON with PREMIER as the Trustee over the Roen Resulting Trust as more particularly described hereinafter.

4.     Defendant WILMINGTON is a corporation formed and existing under the laws of the state of Delaware.   WILMINGTON is a wholly-owned subsidiary of Wilmington Trust Corporation which in turn is a wholly-owned subsidiary of M&T Bank Corporation, a New York corporation.  WILMINGTON is not a bank, nor is WILMINGTON a bank holding company.

COMPLAINT

5.     Defendant WTIA is a corporation formed and existing under the laws of the state of Maryland.  Defendant WTIA is a wholly-owned subsidiary of M&T Bank Corporation which entity also owns Defendant WILMINGTON as stated above.  WTIA is a registered investment adviser under the United States Securities & Exchange Commission.

6.     Plaintiffs are informed and believe and thereon allege that at all times herein mentioned, each Defendant was acting as the partner, co-owner, agent or employee of the other Defendant and in committing the acts herein mentioned was, and is, acting within the scope of his/its authority as such partner, co-owner, agent or employee and with the permission, knowledge, consent and ratification of his/its co-Defendant.

7.     Plaintiffs are further informed and believe and thereon allege that at all times material hereto, each Defendant was acting as the partner, co-owner, agent, servant, employee, officer, director, shareholder, owner, subsidiary, parent corporation or *alter-ego* of the other Defendant, and in doing the things hereinafter alleged, was acting within the course and scope of this relationship and with full knowledge and consent, either express or implied, of the other Defendant.

8.     On information and belief, each Defendant has acted in concert with and with the authorization, consent and knowledge of the other Defendant as alleged herein.  Plaintiffs are further informed and believe that each Defendant, for each act

and omission alleged herein, had a unity of interest with the other Defendant and acted in concert with the other Defendant as a co-conspirator.  Plaintiffs are further informed and believe and thereon allege that at all times material hereto, each of the Defendants acted as a co-conspirator to perpetuate and profit from a common scheme to violate the securities laws identified in this Complaint.

## Jurisdiction and Venue

9.     This is an action for violation of the U.S. Investment Advisers Act of 1940, as amended, codified at 15 U.S.C. §§80b-1 through 80b-21, negligence, breach of fiduciary duty, actual and constructive fraud, and financial elder abuse under California law codified at California Welfare & Institutions Code §15610, *et seq*.

10.     This Court has original jurisdiction pursuant to 28 U.S.C. §1331 over Plaintiffs' claims that the Defendants have violated the U.S. Investment Advisers Act of 1940, as amended. This Court further has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1367.

11.     This Court also has diversity jurisdiction over this action pursuant to 28 U.S.C. §1332 because the claims are entirely between a citizen of the state of California and a trust administered under the laws of the state of California and corporations formed and existing under the laws of the state of Delaware, and the

COMPLAINT

amount in controversy exceeds the amount of $75,000.00, exclusive of interest and costs.

12.    Venue is proper in this district pursuant to 28 U.S.C. §§1391(a) and 1391(b) because a substantial part of the events or omissions giving rise to the claim arose in this district.  Because the Defendants have sufficient minimum contacts with the chosen forum, this Court has personal jurisdiction over the Defendants.

### Nature of the Dispute

13.    At all times mentioned herein, ROGERS was an elderly adult female over the age of 65 years.

14.    At all times mentioned herein, ROGERS was the sole beneficiary under the Roen Resulting Trust.

15.    From December 3, 2008, until January 13, 2015, WILMINGTON acted as the sole Trustee of the Roen Resulting Trust.  Further, during this same period WILMINGTON and WTIA acted as "advisers" to WILMINGTON as the Trustee over the Roen Resulting Trust.  Said time period is hereinafter sometimes referred to as the "Wilmington Trustee Period."

16.    During all or part of the Wilmington Trustee Period, WILMINGTON as Trustee did not grant a written consent for any *discretionary* management of the Roen Resulting Trust assets, both real and personal, to either WILMINGTON or

6

WTIA as investment advisors. Furthermore, during the Wilmington Trustee Period WILMINGTON as Trustee did not grant any written consent to allow WILMINGTON or WTIA as investment advisors to invest in non-suitable investments for her as a beneficiary under the Roen Resulting Trust given the age, health, and status of ROGERS.

17.    During all or part of the Wilmington Trustee Period, ROGERS was not informed, did not know and could not know that WILMINGTON with the assistance of WTIA invested Roen Resulting Trust corpus and principal Trust assets in proprietary investments owned and managed by WILMINGTON or WTIA. Furthermore, during all or part of the Wilmington Trustee Period, an actual conflict of interest existed between WILMINGTON as the Trustee and ROGERS as the beneficiary of the Roen Resulting Trust by reason of the aforesaid. No disclosure was made by WILMINGTON or WTIA to ROGERS of the actual conflict of interest and no attempt was made by WILMINGTON as the Trustee of the Roen Resulting Trust to inform ROGERS of the actual conflict of interest, nor did WILMINGTON obtain any written acknowledgement from ROGERS of any disclosure to her by WILMINGTON of the conflict of interest. At all times mentioned herein, ROGERS was unaware of any potential or actual conflict of interest referenced hereinabove, and ROGERS did not execute any written waiver of any potential or actual conflict of interest which existed between

COMPLAINT

WILMINGTON and WTIA on the one hand as Trustee and investment adviser, and ROGERS on the other hand as the beneficiary under the Roen Resulting Trust.

18.     During all or part of the Wilmington Trustee Period, WILMINGTON provided one or more written reports to ROGERS wherein WILMINGTON confirmed that its investment strategy for the Trust was for an investor with an "intermediate-to-long-term investment horizon who seek growth of capital and a modest amount (sic) of current income."   This statement was identified under "suitability" for ROGERS. *As an elderly person over the age of 65 this strategy and confirmed investment action by WILMINGTON was entirely and completely at odds with the needs of ROGERS as an elderly person.  ROGERS was in need of significant liquid funds to provide for her lifestyle as an elderly person including health care.*  Moreover, WILMINGTON additionally stated in its written reports to ROGERS that the "strategy" was to place Trust corpus and liquid cash into "equity-related investments" which included both domestic and international holdings.  Furthermore, WILMINGTON confirmed in writing that it intended and would be investing Trust corpus and liquid cash in "commodities" and "hedged strategies."  In September of 2016 ROGERS became aware of the following facts and circumstances related to the management of the Roen Resulting Trust by WILMINGTON:  of the total funds available in the Roen Resulting Trust: 60% of the funds were allocated to equity investments, 10% of the funds were allocated to

inflation hedges, 10% of the funds were allocated to hedged strategies, 15% of the funds were allocated to fixed income, and 5% of the funds were allocated to cash or cash equivalents. In addition, in September of 2016 ROGERS became aware that WILMINGTON may have allocated as much as 30% of the funds to hedged strategies. Moreover, in September of 2016 ROGERS became aware that there were "no investment restrictions" for the Roen Resulting Trust concerning any investments made by WILMINGTON as Trustee on behalf of the Roen Resulting Trust.

19.    ROGERS is informed and believes that WILMINGTON invested Trust corpus and liquid cash in investments that lost part or all of the Trust corpus and liquid cash investment or failed to achieve a return on invested capital commensurate with returns available on investments without high risk or investments that were suitable for ROGERS given her age, health and standing. Moreover, ROGERS is informed and believes that WILMINGTON agreed and permitted managers of investment entities wherein the Trust corpus or liquid cash investments were made to take and receive grossly excessive management fees and costs. ROGERS learned of such information in September of 2016.

20.    On or about January 13, 2015, ROGERS as the "Primary Beneficiary" of the Roen Resulting Trust removed WILMINGTON as the Trustee over the Trust and appointed PREMIER as the "Successor Trustee" over the Roen

9

COMPLAINT

Resulting Trust. From and after that date and to the date hereof PREMIER has acted as the Successor Trustee over the Roen Resulting Trust with all rights, authority and powers as stated in the Roen Resulting Trust and as otherwise applicable under law.

21.     After PREMIER assumed the position of Successor Trustee over the Roen Resulting Trust, PREMIER requested financial and tax information from WILMINGTON regarding the assets owned by Roen Resulting Trust and managed by WILMINGTON.  In late March of 2016 WILMINGTON provided PREMIER with several Internal Revenue Service, Form K-1s regarding investments and tax information related to year 2015 for the Roen Resulting Trust.  WILMINGTON did not provide any Form K-1s regarding investments and tax information related to year 2014 for the Roen Resulting Trust.  Thereafter, PREMIER made inquiries and requests upon management representatives of WILMINGTON seeking further information related to Form K-1s for year 2014.  WILMINGTON responded by indicating that no Form K-1s for year 2014 were immediately available, but they anticipated Form K-1s for year 2014 would be completed and delivered to PREMIER in September of 2015.  In reliance upon the representation made by WILMINGTON that the 2014 Form K-1s would be forthcoming in September of 2015, PREMIER and its financial advisors including the Trust accountants made financial plans for the tax obligations of the Trust based upon the available Form

10

K-1s from year 2015 which were provided by WILMINGTON to PREMIER in March and April of 2016.  PREMIER further requested other financial information related to WILMINGTON's administration of the Roen Resulting Trust during the Wilmington Trustee Period and as of the date hereof WILMINGTON has failed to provide the requested information to PREMIER.  PREMIER is informed and believes that such information is relevant and material to the claims made in this Complaint and the same may support further legal rights of ROGERS and the Trust against WILMINGTON and against other parties who are as yet unknown.

22.    In reliance upon the representations made by WILMINGTON as identified in paragraph 21, hereinabove, PREMIER hired the services of a third party independent certified public accounting firm in or about May of 2015 to prepare federal and state tax returns for the Roen Resulting Trust and for ROGERS. PREMIER and the third party independent certified public accounting firm thereafter prepared federal and state tax returns for the Roen Resulting Trust and for ROGERS based upon the information provided by WILMINGTON.  Later, in year 2016, in the course of the tax return preparation, PREMIER made further requests of WILMINGTON to determine if there would be any additional Form K-1s for the Roen Resulting Trust related to any "proprietary funds" of WILMINGTON.  After multiple requests by PREMIER for the tax information referenced above, WILMINGTON finally delivered the Form K-1s for year 2014

11

in September of 2016 to PREMIER.  The actual Form K-1s for year 2014 which were produced by WILMINGTON and delivered to PREMIER were significantly different than the Form K-1s for year 2015 which had earlier been delivered by WILMINGTON to PREMIER.  The deviations which occurred related primarily to a significantly higher long-term capital gain in one or more of the "proprietary funds" of WILMINGTON, which deviations created a tax liability of approximately $1,800,000.00 to the Roen Resulting Trust which tax liability could have been avoided entirely or could have been mitigated if WILMINGTON had provided the Form K-1s for year 2014 to PREMIER and the independent certified public accounting firm for the Roen Resulting Trust as promised in September of 2015.

23.    During the Wilmington Trustee Period WILMINGTON managed approximately $62,000,000.00 of Trust corpus and cash/equity related assets.  Of this amount, approximately 60% of the Trust corpus was invested in equity assets which were "proprietary" to WILMINGTON.  A majority of the proprietary funds of WILMINGTON were restricted and illiquid and most, if not all funds, did not have a CUSIP number.  Furthermore, Plaintiffs are informed and believe and based thereon allege that the investment agreements for these proprietary funds of WILMINGTON prohibited liquidation or assignment of rights for the benefit of the Roen Resulting Trust and further penalties would apply if Roen Resulting

12

COMPLAINT

Trust requested a liquidation of any investment in the WILMINGTON proprietary funds.

## COUNT I

## NEGLIGENCE

### (Against Each Defendant by Each Plaintiff)

24.     Plaintiffs reallege and incorporate by reference herein, paragraphs 1 through 23, inclusive, of the preliminary allegations, as though said paragraphs were set forth herein at length.

25.     During the Wilmington Trustee Period WILMINGTON and WTIA each had an independent duty to ROGERS as an individual and to the Roen Resulting Trust to use such skill, prudence, and diligence as other members of their profession commonly possess and exercise.

26.     Defendants have breached their duty of care owed to ROGERS and to the Roen Resulting Trust by reason of the facts and circumstances set forth hereinabove.

27.     Plaintiffs have each suffered damages by reason of Defendants' acts and omissions in a sum according to proof at trial.  Defendants' breach of the duty of care owed to ROGERS and to the Roen Resulting Trust was both the actual and proximate cause of the damages suffered by Plaintiffs.

///

# COUNT II

## BREACH OF FIDUCIARY DUTY AS TRUSTEE

### (Against Each Defendant by Plaintiff ROGERS)

28.    Plaintiff realleges and incorporates by reference herein paragraphs 1 through 27 as though said paragraphs were set forth herein at length.

29.    Defendant WILMINGTON agreed to act as an agent and fiduciary of Plaintiff ROGERS by reason of its acceptance to act as Trustee over the Roen Resulting Trust and its agreement to act as an investment adviser to the Trust. Further, Defendant WTIA agreed to act as an agent and fiduciary of Plaintiff ROGERS by reason of its acceptance to act as a registered investment adviser to WILMINGTON as the Trustee over the Roen Resulting Trust.  Both Defendants knew and understood that ROGERS was the "Primary Beneficiary" under the Roen Resulting Trust.  Each Defendant stood in a fiduciary relationship with ROGERS.

30.    Defendants WILMINGTON and WTIA each independently breached their fiduciary duties owed to ROGERS by reason of the facts and circumstances described hereinabove.

31.    As a result of Defendants' breach of duty, Plaintiff has been damaged in an amount no less than the sum of $2,200,000.00.

32.    The aforementioned acts of Defendants WILMINGTON and WTIA were willful, wanton, malicious and oppressive and were undertaken with the intent

14

COMPLAINT

to defraud Plaintiff and cause Plaintiff harm.  Accordingly, an award of exemplary and punitive damages against each Defendant is justified.

## COUNT III

## CONSTRUCTIVE FRAUD AS TRUSTEE

### (Against Each Defendant by Each Plaintiff)

33.     Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 27 as though said paragraphs were set forth herein at length.

34.     Both Defendants owed a fiduciary duty and were in a fiduciary relationship to the Plaintiffs.  The Defendants were acting in the capacity of either a Trustee over the Roen Resulting Trust or as an investment adviser to the Roen Resulting Trust.  In addition, each Defendant owed a duty to the Roen Resulting Trust and to ROGERS not to engage in activity which would permit the Defendants to gain an unfair advantage over the Plaintiffs or to mislead the Plaintiffs to their detriment or prejudice.  The acts and omissions of the Defendants as stated hereinabove involve a breach of the Defendants' duties, both legal and equitable, to the Plaintiffs and the breach resulted in damage to the Plaintiffs.

35.     The Defendants were in a confidential and fiduciary relationship with the Roen Resulting Trust and with ROGERS during the Wilmington Trustee Period.  Each Defendant took advantage of their confidential and fiduciary relationship to the detriment of the Roen Resulting Trust and ROGERS.  Moreover, the Defendants

15

COMPLAINT

failed to disclose material facts within their respective knowledge to the Plaintiffs. By reason of the confidential and fiduciary relationship between each Defendant and each Plaintiff, Plaintiffs were induced to justifiably rely upon the fidelity of the Defendants to act in the best interests of each Plaintiff.  The reliance placed upon each Defendant by each Plaintiff caused injury to each Plaintiff to their detriment.

36.     As a proximate result of Defendants' constructive fraud and deceit and the facts herein alleged, Plaintiffs have incurred damages in the sum of not less than $2,200,000.00.     Furthermore, by reason thereof, Plaintiffs have also suffered incidental and consequential damages in a sum according to proof at time of trial.

37.     The aforementioned acts of Defendants WILMINGTON and WTIA were willful, wanton, malicious and oppressive and were undertaken with the intent to defraud Plaintiff and cause Plaintiff harm.  Accordingly, an award of exemplary and punitive damages against each Defendant is justified.

## COUNT IV

## FINANCIAL ELDER ABUSE

### (Against Each Defendant by Plaintiff ROGERS)

38.     Plaintiff realleges and incorporates by reference herein paragraphs 1 through 27 and paragraph 34 through 37 as though said paragraphs were set forth herein at length.

39.     At all times stated herein, ROGERS was an "elder" within the meaning

COMPLAINT

of California Welfare & Institutions Code §15610.27.

40.     At all times during the Wilmington Trustee Period Defendants WILMINGTON and WTIA stood in a position of trust and confidence with ROGERS in that they were acting as investment advisers to the Roen Resulting Trust and in the case of WILMINGTON, acting as the Trustee over the Roen Resulting Trust. ROGERS reposed her trust and confidence in WILMINGTON and relied upon their integrity and fidelity to ROGERS.

41.     During the Wilmington Trustee Period, Defendants for their own benefit and to the detriment of ROGERS, took, hid, appropriated, obtained, or retained cash proceeds of the Roen Resulting Trust which were properly the property of the Roen Resulting Trust for the benefit of ROGERS as the Principal Beneficiary.   Furthermore, each Defendant assisted the other Defendant in the aforesaid acts for their own benefit and to the detriment of ROGERS.

42.     Both WILMINGTON and WTIA were each independently in a position of confidence and trust as to ROGERS, and by reason of the same took unfair advantage of ROGERS as the Primary Beneficiary under the Roen Resulting Trust.   The Defendants knew or should have known that the conduct described herein was likely to harm ROGERS. The acts of Defendants as alleged herein caused financial harm to ROGERS within the meaning of California Welfare & Institutions Code §15610.30(c).

COMPLAINT

43.     Defendants' conduct as described and alleged herein was a substantial factor and constitutes financial abuse within the meaning of California Welfare & Institutions Code §15610.30.

44.     The aforementioned acts of Defendants WILMINGTON and WTIA were willful, wanton, malicious and oppressive and were undertaken with the intent to defraud Plaintiff and cause Plaintiff harm.  Accordingly, an award of exemplary and punitive damages against each Defendant is justified in the commission of the financial abuse of ROGERS described and alleged herein.

45.     ROGERS is entitled to her reasonable attorneys' fees and costs from Cross-Defendants in accordance with California Welfare & Institutions Code §15657(a).

46.     Plaintiff ROGERS by legal counsel issued a written demand letter on WILMINGTON and WTIA under California Welfare & Institutions Code §15657.6.  Notwithstanding request made by Plaintiff to Defendants by the demand letter, Defendants have refused to return ROGERS's property in further violation of California Welfare & Institutions Code §15657.6.

///

///

///

18

COMPLAINT

**COUNT V**

**(VIOLATION OF THE U.S. INVESTMENT ADVISERS ACT OF 1940)**

**(Against Defendants WILMINGTON and WTIA by Plaintiff PREMIER)**

47.     Plaintiff realleges and incorporates herein by reference paragraphs 1 through 27, inclusive, as though said paragraphs were set forth herein at length.

48.     PREMIER as the Successor Trustee of the Roen Resulting Trust brings this claim on behalf of the Trust against the Defendants.

49.     This claim is brought under the U.S. Investment Advisers Act of 1940, as amended and as codified at 15 U.S.C. §§80b-1 through 80b-21 (hereinafter sometimes the "Advisers Act").

50.     Defendants are each investment advisers pursuant to Section 202(a)(11) of the Advisers Act.   They each received compensation and are engaged in the business of providing advice to others, issuing reports or analyses regarding securities as stated hereinabove regarding the Roen Resulting Trust. Each Defendant did so in connection with WILMINGTON and its management of the Roen Resulting Trust.   The Roen Resulting Trust compensated each Defendant for services rendered to the Trust in connection with the management and supervision of the Roen Resulting Trust corpus and cash/equities owned by the Trust.   The Defendants engaged in such activity and received compensation during the Wilmington Trustee Period.

COMPLAINT

51.  Each Defendant is subject to the Advisers Act anti-fraud provisions. Accordingly, each Defendant owed to the Roen Resulting Trust a broad fiduciary duty to act in the best interest of the Trust. The fiduciary position of each Defendant as an investment adviser to the Roen Resulting Trust required the Defendants to avoid any conflicts of interest with the Trust and from overreaching or taking unfair advantage of the Roen Resulting Trust (and its primary beneficiary, Plaintiff ROGERS herein).

52.  Pursuant to the Advisers Act, the Defendants each had an affirmative obligation to act with utmost good faith towards the Roen Resulting Trust and to make full and fair disclosure of all facts material to the Trust's engagement of each Defendant as an investment adviser. Moreover, this duty includes a duty of each Defendant to avoid any act or omission which would mislead the Roen Resulting Trust (and its primary beneficiary – Plaintiff ROGERS). Furthermore, the duty of each Defendant was to refrain from any fraudulent conduct which included an obligation to disclose material facts to the Trust whenever a failure to do so would defraud or operate as a fraud or deceit upon the Trust. Disclosure includes any actual or potential conflict of interest between the Defendants and their client – the Roen Resulting Trust. (U.S. Securities & Exchange Commission rules and regulations confirm that the Defendants had an affirmative obligation to disclose all material facts regarding any actual or potential conflict between them

COMPLAINT

and the Trust so that the Trust could make an informed decision whether to enter into or continue an advisory relationship with the Defendants, or either of them, or take some action to protect the Trust from the actual or potential conflict of interest.)   In addition to the above, the Defendants owed the Trust a duty to provide "suitable investment advice."  This duty required the Defendants to make a reasonable inquiry of the Trust's financial situation (including the primary beneficiary – Plaintiff ROGERS), the investment experience and investment objectives of the Trust (taking into account the needs of the primary beneficiary – Plaintiff ROGERS) and to make a reasonable determination that the investment advice given to the Trust was suitable in light of the situation, experience and objectives of the Trust (and its primary beneficiary – Plaintiff ROGERS).

53.    The Advisers Act also prohibited the Defendants, and each of them, from acting as a principal for their own account or from knowingly selling any security to the Roen Resulting Trust without disclosing to the Trust in writing its position and capacity, whether for itself or an affiliate, and thereafter to obtain the Trust's consent before completion of any sale transaction by the Defendants to the Roen Resulting Trust.  Moreover, such consent must be obtained separately for each transaction and a blanket consent is insufficient.  During the Wilmington Trustee Period Defendant WILMINGTON and Defendant WTIA either jointly or independently failed to disclose conflicts of interest to the Trust between the Roen

21

Resulting Trust and the Defendants related to investments made in proprietary investments of WILMINGTON or its affiliates.  Additionally, these Defendants did not obtain any written consent from the Roen Resulting Trust to any actual or potential conflict of interest between WILMINGTON and the Trust or WTIA and the Trust.

54.    Defendants also violated Section 206 of the Advisers Act by investing corpus and cash assets of the Roen Resulting Trust into "proprietary" investments managed and operated by WILMINGTON, WTIA or affiliates of the Defendants since these proprietary investments restricted the ability of the Trust to liquidate its positions in these proprietary investments.  These restrictions and penalties on liquidation which, in fact, did occur when the Roen Resulting Trust changed management of the Trust from WILMINGTON to PREMIER violate Section 206 of the Advisers Act by penalizing the Trust for ending the advisory relationship between WILMINGTON and the Trust or WTIA and the Trust.  (See *National Deferred Compensation,* SEC Staff No-Action Letter (August 31, 1987) – "An advisor may not fulfill its fiduciary obligations if it imposes a fee structure penalizing a client for deciding to terminate the advisor's service or if it imposes an additional fee on a client for choosing to change his investment.")

55.    PREMIER had no way of discovering the aforesaid wrongs until September of 2016 when PREMIER obtained the 2014 K-1s for investments made

COMPLAINT

by WILMINGTON and WTIA in connection with the Roen Resulting Trust.

56.     By reason of the various breaches of fiduciary duty by both Defendants as investment advisers to the Roen Resulting Trust, the Trust has been damaged in a sum in excess of $2,200,000.00 and in a total amount to be proven at time of trial.

57.     Plaintiffs seek a Court adjudication and judgment requiring rescission or restitution of all investments made by the Defendants on behalf of the Plaintiff .

WHEREFORE, Plaintiffs prays for judgment against Defendants, and each of them, as follows:

As to the First Count for Negligence:

1.     For general damages in a sum according to proof, but in no event less than $2,200,000.00;

2.     For consequential and incidental damages in an amount according to proof;

3.     For costs of suit herein incurred; and,

4.     For such other and further relief as the Court deems proper.

As to the Second Count for Breach of Fiduciary Duty as Trustee:

1.     For general damages in a sum according to proof, but in no event less than $2,200,000.00;

2.     For exemplary and punitive damages in a sum according to proof at the

COMPLAINT

time of trial;

3.    For costs of suit herein incurred; and,

4.    For such other and further relief as the Court deems proper.

As to the Third Count for Constructive Fraud as Trustee:

1.    For general damages in a sum according to proof, but in no event less than $2,200,000.00;

2.    For exemplary and punitive damages in a sum according to proof at the time of trial;

3.    For costs of suit herein incurred; and,

4.    For such other and further relief as the Court deems proper.

As to the Fourth Count for Financial Elder Abuse:

1.    For general damages in a sum according to proof, but in no event less than $2,200,000.00;

2.    For attorneys' fees and costs of suit herein incurred pursuant to California Welfare & Institutions Code §15657.6; and,

3.    For such other and further relief as the Court deems proper.

As to the Fifth Count for Violation of U.S. Investment Advisers Act of 1940:

1.    For an adjudication and order requiring Defendants, and each of them, to rescind the subject investments and to restore by restitution to the

24

COMPLAINT

Plaintiff the monetary investment made in the subject investments;

2.      For such other and further relief as the Court deems proper.


DATED: March 16, 2017                Respectfully submitted,

                                     CATANESE & WELLS
                                     A Law Corporation


                           By:      /s/ T. Randolph Catanese, Esq.
                                     T. Randolph Catanese
                                     Attorneys for Plaintiff
                                     FRIEDA MAE ROGERS




## **DEMAND FOR JURY TRIAL**

Plaintiff FRIEDA MAE ROGERS hereby demands trial by jury.


DATED: March 16, 2017                Respectfully submitted,

                                     CATANESE & WELLS
                                     A Law Corporation


                           By:      /s/ T. Randolph Catanese, Esq.
                                     T. Randolph Catanese
                                     Attorneys for Plaintiff
                                     FRIEDA MAE ROGERS

COMPLAINT