# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRIEDA MAE ROGERS f/k/a FRIEDA ROGERS ROEN; and PREMIER TRUST, INC., a Nevada corporation, as Trustee of the FRIEDA M. ROEN RESULTING TRUST u/a/d July 19, 1934,<br><br>Plaintiff<br><br>v.<br><br>WILMINGTON TRUST COMPANY, a Delaware corporation; and WILMINGTON TRUST INVESTMENT ADVISORS, INC., a Maryland corporation,<br><br>Defendants | CASE NO. 1:17-CV-00392 AWI SAB<br><br>**ORDER ON MOTION TO CHANGE VENUE AND ORDER TRANSFERRING MATTER TO THE DISTRICT OF DELAWARE**<br><br>(Doc. 10, 12, 13) |

This case arises from a dispute concerning the management of a trust. Frieda Mae Rogers ("Rogers") and Premier Trust, Inc. ("Premier") (collectively "Plaintiffs") have alleged claims of negligence, breach of fiduciary duty, constructive fraud, financial elder abuse and a violation of the U.S. Investment Advisers Act against Wilmington Trust Company ("WTC") and Wilmington Trust Investment Advisors ("WTIA") (collectively "Defendants").

Defendants have moved to dismiss the negligence and Investment Advisors Act causes of action for failure to state a claim on which relief might be granted, and WTIA has moved to dismiss for lack of personal jurisdiction. Further, WTC has requested transfer of the entirety of the action to the U.S. District Court for the District of Delaware, under 28 U.S.C. § 1404(a).

For the reasons that follow, the Court now transfers this matter to the District of Delaware.

# **RELEVANT FACTUAL BACKGROUND**[1]

In 1934, Katherine Stuart Stibbs created a trust, naming WTC, a Delaware corporation headquartered in Delaware, as trustee. In 2004, the Delaware Court of Chancery bifurcated this trust, and in 2008, the same court further divided one of the halves into five separate trusts. The trust at issue in this case—the "Roen Trust"—springs from the 2008 partition.

Rogers, an elderly resident of the Eastern District of California ("EDCA"), is the primary beneficiary of the Roen Trust. From 2008 to 2015, WTC continued as trustee for the Roen Trust, administering it from its Wilmington, Delaware offices, as guided by Delaware law. WTC employee Christopher Sullivan served as the Roen Trust's "Investment Advisor," Tonia Gamble-Kennedy served as Rogers' "relationship manager," and three other WTC employees assisted Sullivan and Gamble-Kennedy. At the time of this lawsuit, only Christopher Sullivan was employed with WTC—though each of the four ex-employees still reside in Delaware.

In January 2015, Rogers removed WTC as trustee of the Roen Trust, and named Premier, a Nevada corporation headquartered in Nevada, as successor trustee. While investigating WTC's decisions, Rogers consulted with two members of a CPA firm, an "estate-planning attorney" and a "close personal friend," each of whom resides in the EDCA. Rogers also consulted two "wealth advisors" located in the Central District of California ("CDCA"). Additionally, Premier communicated with WTC about the prior investment and tax status of the Roen Trust, and WTC at times either delayed in providing forms or failed to communicate information to Premier, to the further detriment of the Roen Trust.

Plaintiffs filed this lawsuit, contending WTC allegedly "lost part or all of the [t]rust corpus and liquid cash investment[s] or failed to achieve a return on invested capital commensurate with [lower-risk] investments." Plaintiffs maintain WTC made unauthorized discretionary management decisions that caused a financial loss to the Roen Trust—negatively affecting Rogers' financial interests as beneficiary. Plaintiffs also maintain WTC conspired with WTIA, a Maryland

---

[1] These facts are drawn from the pleadings and affidavits filed with this Court; factual conflicts are resolved in favor of the non-moving party for purposes of this Order. *Universal Stabilization Techs., Inc. v. Advanced Bionutrition Corp.*, 2017 WL 1838955, at *9 (S.D. Cal. May 8, 2017) ("When reviewing a motion to transfer venue ... a court may consider evidence outside of the pleadings but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party.").

corporation headquartered in Maryland, "related to all management and investment decisions" of the Roen Trust. Both WTC and WTIA are wholly-owned subsidiaries of M&T Bank Corporation, and Plaintiffs allege WTC and WTIA each acted as "partner, co-owner, agent, employee . . . or *alter ego*" of the other during WTC's tenure as trustee of the Roen Trust.

WTIA now moves to dismiss for lack of personal jurisdiction, Defendants each move for a Rule 12(b)(6) dismissal of the negligence and Investment Advisors Act claims, and WTC requests transfer under 28 U.S.C. § 1404(a) to the District of Delaware.

## **DISCUSSION**

### I. Motion to Change Venue Under 28 U.S.C. § 1404(a)

*Defendants' Argument*

WTC maintains Delaware is the "clear center of gravity for nearly every aspect of this case," and therefore transfer under § 1404(a) is appropriate. WTC emphasizes that the Roen Trust "was created and administered in Delaware, all of the complained-of activities occurred in Delaware, likely all of the critical non-party witnesses and evidence are in Delaware," and that "the trust agreement itself specifies that both the agreement and the trusts created thereunder are to be governed and interpreted according to Delaware law." WTC contends that, "of the twelve factors set out by the Ninth Circuit as relevant to a motion to transfer, eleven are supportive of the transfer of this case to the District of Delaware."

*Plaintiffs' Opposition*

Plaintiffs counter that WTC has failed to carry their burden demonstrating whether the EDCA or Delaware are proper venues for their action, necessitating denial of WTC's motion to transfer. Further, Plaintiffs contend "all balancing factors weigh against transfer," including that Rogers chose the EDCA as her preferred venue. Plaintiffs highlight that "important agreements were negotiated in the [EDCA]," California law governs the causes of action (and not Delaware law, as WTC argues), Rogers was harmed in the EDCA, many other critical non-party witnesses are in the EDCA, California has a strong local interest in the case, and other factors are either neutral or weigh in favor of the EDCA. Thus, Plaintiffs aver that transfer to Delaware would serve neither the convenience of the parties nor the interests of justice.

3

## *Legal Standard*

28 U.S.C. § 1404(a) provides in relevant part: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). This statute partially displaces the common law doctrine of *forum non conveniens*. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

The purpose of § 1404(a) is "to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Organization, Inc. v. RICOH Corp.*, 487 U.S. 22, 29 (1988).

In order to transfer a case under § 1404(a), the "defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker*, 805 F.2d at 843. In deciding whether to transfer under § 1404(a), courts consider *inter alia*: (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the forum's contacts with the plaintiff's cause of action; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (8) the ease of access to sources of proof; (9) the presence of a forum selection clause (which is a "significant factor"); (10) the relevant public policy of the forum state, if any; (11) convenience of the parties; (12) convenience of the witnesses; (13) local interest in the controversy; (14) court congestion of the two forums; and (15) feasibility of consolidating other claims. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000); *Hawkins v. Gerber Prods. Co.*, 924 F.Supp.2d 1208, 1213 (S.D. Cal. 2013); *Barnes & Noble, Inc. v. LSI Corp.*, 823 F.Supp.2d 980, 994 (N.D. Cal. 2011); *Metz v. United States Life Ins. Co.*, 674 F.Supp.2d 1141, 1145-46 (C.D. Cal. 2009).

*Analysis*

There is some dispute as to whether this case might have been brought in the District of Delaware: Plaintiffs contend WTC has failed to explain why Delaware would have jurisdiction.

Subject matter jurisdiction would be proper in Delaware for the same reasons as exist for the EDCA. Plaintiffs filed one claim of a violation of the Investment Advisors Act, 15 U.S.C. §§ 80b-1 through 80b-21, and so each district would have 'arising under' jurisdiction, 28 U.S.C. § 1331, and supplemental jurisdiction over the corresponding state law claims, 28 U.S.C. § 1367. Plaintiffs further allege diversity jurisdiction, 28 U.S.C. § 1332, since the parties are citizens of different states and the amount in controversy exceeds $75,000.

WTC does not contest personal jurisdiction in the EDCA, and admits general personal jurisdiction would lie in Delaware since it is a Delaware corporation. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760-61 (2014). WTIA, in their motion to dismiss for lack of California personal jurisdiction (Doc. 10), admits that personal jurisdiction would lie in Delaware:

- "As explained more fully in Wilmington Trust's Motion to Transfer Venue, the most efficient resolution of this matter can only be obtained in Delaware, not California."
- "Finally, as more fully explained in Wilmington Trust's Motion to Transfer Venue, a more than adequate alternative venue exists – the District of Delaware. Litigation in the District of Delaware is more practical for both WTIA and [WTC] . . . ."

*See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Plaintiffs do not dispute this contention. Therefore, the District of Delaware would have personal jurisdiction over both Defendants.

As to the propriety of venue in Delaware, the question is whether "a substantial part of the events or omissions giving rise to the claim occurred in that district." *See Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001). As alleged, it is clear a substantial portion of the management of the trust took place in Delaware.

Because Delaware could exercise jurisdiction and venue is proper there, the District of Delaware is a district where this case might have been brought. The Court now turns to an analysis of whether transfer to Delaware is appropriate under 28 U.S.C. § 1404(a).

5

*1.     Location Where the Contract Was Negotiated and Executed*

It is clear from the pleadings, as well as from the affidavits and exhibits attached to the parties' motion to transfer, that the relevant trust documents were created and executed in Delaware. Both the original 2004 partition and the 2008 Roen Trust were notarized in Delaware and filed with the Delaware Court of Chancery. Plaintiffs highlight that two documents appointing Premier as the successor trustee in 2015 were negotiated and executed in the EDCA. However, the core of Plaintiffs' complaint focuses on WTC's management of the Roen Trust between 2008 and 2015, and WTIA's involvement therewith, lessening the relevance of Premier's successor-trustee documents. Therefore, this factor weighs in favor of transfer to Delaware.

*2.     State Most Familiar with the Governing Law*

The 2004 Delaware order partitioning the 1934 trust states it is to be administered and distributed under the terms of the 1934 Delaware trust. Further, the 2008 Roen Trust, as approved by the Delaware Court of Chancery, states that it is to be "governed and interpreted according to the laws of the State of Delaware." Each of Plaintiffs' five causes of action against Defendants relates to WTC's duties and powers as trustee of the Roen Trust, including whether any of WTC's actions were for Rogers' benefit and to what extent WTC had discretion to utilize WTIA's services. Of the five claims, Plaintiffs raise three at common law—negligence, breach of fiduciary duty as trustee, and constructive fraud as trustee—and one under a federal statute— for violations of the Investment Advisers Act of 1940, 15 U.S.C. §§ 80b-1 through 80b-21. Only one cause of action—financial elder abuse under California Welfare & Institutions Code § 15610.30(c)—is specifically tied to California.[2] Thus, this clear choice of law favors transfer to Delaware, as Delaware will be more familiar with the majority of Plaintiffs' claims.

*3.     Plaintiffs' Choice of Forum*

Generally, a plaintiff's choice of forum is given substantial weight. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). However, other considerations may lessen the weight to be given a plaintiff's choice. *See Park v. Dole Fresh Vegetables, Inc.*, 964 F.Supp.2d 1088, 1094 (N.D. Cal. 2013). One such consideration is if the conduct giving rise to the plaintiff's claims

---

[2] WTC concedes that this last claim "will be governed by California law" if this case is transferred Delaware.

occurred in another forum. *Id.*; *see also Critters of the Cinema, Inc. v. Nestle Purina Petcare Co.*, 2016 WL 2990619, at *5 (E.D. Cal. May 24, 2016), *Williams v. Bowman*, 157 F.Supp.2d 1103, 1107 (N.D. Cal. 2001). Here, Plaintiffs have chosen the EDCA as their preferred forum, and this choice is given its due weight. However, as described in the remainder of this order, the weight afforded Plaintiffs is lessened in light of the fact that the bulk of Defendants' acts giving rise to Plaintiffs' suit occurred in Delaware.

### 4. *Parties' Contacts with the Forum*

Rogers is a resident of the EDCA, and as such has sufficient contacts with California that weigh in favor of retaining the case. However, the remaining parties appear to have no contact with the EDCA. Premier is incorporated and headquartered in Nevada, and WTIA is a creature of Maryland. WTC, as described above, is a Delaware entity, and while it does maintain two offices in California, neither is located in the EDCA. Thus, given the dispersed nature of the parties, this factor favors neither transferring nor retaining the cause of action and is therefore neutral.

### 5. *Forum's Contacts with the Plaintiffs' Cause of Action*

Contrary to Plaintiffs' assertions, a substantial portion of the conduct giving rise to their claims occurred in Delaware. This conduct, as described in Plaintiffs' petition, includes:

- "Wilmington as Trustee did not grant a written consent for any discretionary management of the [Roen Trust] . . . to either [WTC] or WTIA."
- "[WTC] with the assistance of WTIA invested Roen Trust corpus and principal trust assets in proprietary investments owned and managed by [WTC] or [WTIA]," resulting in a "conflict of interest."
- WTC's strategy was "to place Trust corpus and liquid cash into 'equity-related investments' which included both domestic and international holdings," which Rogers alleges did not occur. Instead, WTC "invested Trust corpus and liquid cash in investments that lost part or all of the Trust corpus and liquid cash investment or failed to achieve a [commensurate] return on invested capital . . . ."
- WTC's investments "created a tax liability of approximately $1.8 million," an event that could have been mitigated if WTC "had provided the Form K-1's to Premier."
- By placing the majority of the Roen Trust corpus in illiquid, proprietary funds, WTC "prohibited liquidation or assignment of rights for the benefit of [the Trust] and further penalties would apply if [the Trust] requested a liquidation of any investment."

Thus, it appears the bulk of Plaintiffs' claims concern actions taken outside of the EDCA.

7

Plaintiffs maintain that since Rogers was a resident of the EDCA during the relevant seven-year period, much of the alleged harm done to her was felt in the EDCA. *See Critters,* 2016 WL 2990619, at *5 ("The location where the injury/harm is felt is relevant to determining venue."). While the Court agrees that this fact would support an argument that venue would lie in the EDCA, the current analysis concerns which forum is more convenient. Plaintiffs' argument that "all of WTC's acts and omissions, as well of its alleged principal or agent/co-conspirator/alter ego WTIA" took place in the EDCA are unpersuasive, given the facts alleged in Plaintiffs' complaint and the nature of Plaintiffs' claims against WTC. Due to the substantial connection between the alleged acts and the District of Delaware, this factor weighs in favor of transfer.

*6. Differences in Litigation Costs between the Two Forums*

Plaintiffs have alleged that the difference in litigation costs weigh in favor of the EDCA. For support, Plaintiffs point to the fact that both WTC and WTIA are corporations, who are "better-equipped than individuals to absorb increased litigation costs." *In re Ferrero Litig.*, 768 F. Supp. 2d 1074, 1081 (S.D. Cal. 2011). However, the Court notes that one Plaintiff, Premier, is also a corporation, and Rogers is the sole beneficiary of a $62 million dollar trust. Since all parties appear to be able to afford the cost to litigate in either forum, this factor is neutral.

*7. Compulsory Process for Unwilling Non-Party Witnesses*

The parties have not identified any witnesses who are unwilling to testify, but of those identified, the EDCA could compel most of Plaintiffs' witnesses and only one of Defendants'.

Rogers identified two employees of a CPA firm, an "estate-planning attorney" and a "close personal friend" as witnesses residing in the EDCA. Rogers also consulted two "wealth advisors" residing in the CDCA, whose offices are not within 100 miles of this Court, but on whom this Court could serve a subpoena.[3]

---

[3] See Fed. R. Civ. P. 45(c)(1)(B)(2) (allowing the court to command a person to attend a trial, hearing or deposition where the person regularly transacts business in person in the state and "would not incur substantial expense."); *see also*, *Legal Voice v. Stormans Inc*., 738 F.3d 1178, 1184 (9th Cir. 2013) (holding that cost shifting is mandatory in all instances in which a non-party incurs "significant expense" from compliance with a subpoena); *Garlough v. Trader Joe's Co.*, 2015 WL 4638340, at *5 (N.D. Cal. Aug. 4, 2015) (discussing the *Legal Voice* principle as applied to Rule 45(c)(1)(B)(2)).

1	WTC identified five witnesses, each of whom resides in Delaware. Christopher Sullivan,
2	the "Investment Advisor" to the Roen Trust, is a current employee of WTC, and therefore can be
3	compelled by his employer to attend any court. *Lax v. Toyota Motor Corp.*, 65 F.Supp.3d 772,
4	779 (N.D. Cal. 2014). However, the remaining four witnesses identified by WTC no longer work
5	for the company—including Tonia Gamble-Kennedy, the "Relationship Manager" for the Roen
6	Trust; these four would be beyond the subpoena power of the EDCA.

Premier and WTIA have not identified any additional witnesses, though WTIA has also relied on the affidavit of Christopher Sullivan in support of its motion to dismiss; as discussed above, Sullivan can be compelled by his employer to attend any court.

On balance, this is a neutral factor, for the Court aims to avoid shifting the inconvenience from one party to the other. *See Decker*, 805 F.2d at 843.

### 8. *Ease of Access to Sources of Proof*

The parties have not conducted formal discovery, though WTC has produced the governing documents for the 2004 and 2008 trusts, and Plaintiffs have submitted Premier's notice of appointment as successor trustee. However, both Rogers and WTC allege they are in possession of physical materials relevant to the inquiry. Rogers contends she possesses documents, assumedly information mailed to her from WTC during its administration of the Roen Trust. WTC contends it possesses "voluminous" records regarding the investment decisions it made, all of which WTC avers are "likely to reside in Delaware." To the extent that e-mails or electronically stored documents may be involved, such evidence can likely be "transported" and printed without great difficulty. *See Critters,* 2016 WL 2990619 at *7. However, Plaintiffs allege mismanagement of the Roen Trust, and do not dispute that WTC conducted its administration from its Wilmington, Delaware offices, so any such "voluminous" physical records would likely be located in Delaware. *See Roe v. Intellicorp Records, Inc.*, 2012 WL 3727323, at *3 (N.D. Cal. Aug. 27, 2012) (documents pertaining to defendants' business practices are most likely to be found at their principal place of business).

Therefore, this factor weighs in favor of transfer to Delaware.

### 9. *Presence of a Forum Selection Clause*

The parties have not identified a forum selection clause. Therefore, this is a neutral factor.

### 10. *Relevant Public Policy of the Forum State*

Delaware has an interest in overseeing and protecting its citizens and corporate entities. *See Gill v. Simpson*, 2012 WL 4863808, at *10 (E.D. Cal. Oct. 12, 2012). Conversely, the EDCA has an interest in ensuring that one of its citizens has a litigation forum, and also has an interest in ensuring that its citizens are not the victims of a tort, including elder abuse. *See Id*., see also Cal. Wel. & Inst. Code § 15600 (reciting California's public policy of protecting elders against financial abuse under the Elder Abuse Act).

Here, Rogers is undoubtedly a resident of the EDCA, where the alleged harm was likely felt. Additionally, Plaintiffs argue that California's Elder Abuse Act is much more robust than the comparable Delaware law, and so the public policy of California should favor their choice of venue in the EDCA. However, "simply pointing out that one state has a law that another might not, or that one state's law is more favorable than another's, is not enough." *Scott v. Lopez*, 2013 U.S. Dist. LEXIS 40636, *11 (N.D. Cal. Mar. 21, 2013). As discussed above, the Court is confident Delaware can apply the proper law in this case.

Conversely, the location of WTC's principal place of business as well as its alleged acts and omissions overseeing a longstanding Delaware trust all support transfer to the District of Delaware. *Gill*, 2012 WL 4863808 at *10 (where transferee district housed more citizens and was location of transfer of assets and stocks, transfer under § 1404(a) was appropriate). Therefore, this factor tilts toward transfer to Delaware.

### 11. *Convenience of the Parties*

Given the dispersed locale of the parties, no one forum would perfectly convenience any party. Rogers is at home in the EDCA, and Premier has joined this lawsuit and is therefore comfortable in the EDCA. WTC in located in Delaware, and while it does maintain offices in California, these locations are not in the EDCA. Finally, WTIA is a Maryland corporation, but admits in its motions before this Court that Delaware is the appropriate forum.

Therefore, this factor cannot weigh in favor of any district and is considered neutral.

*12.     Convenience of the Witnesses*

The convenience of witnesses is often considered the most important consideration in determining whether to transfer a case under § 1404. *See Critters,* 2016 WL 2990619, at *7. In order to properly assess the convenience of witnesses, the parties should identify the witnesses, the location of the witnesses, and the content and relevance of the witnesses' testimony. *Id.* The parties are obligated to clearly specify the key witnesses to be called and make at least a generalized statement of what their testimony would have included. *Amini Innovation Corp. v. JS Imps., Inc.*, 497 F. Supp. 2d 1093, 1111 (C.D. Ca. 2007). Courts are not to simply consider the number of witnesses listed by a party; rather courts are to consider the nature and quality of each witness's testimony. *Vesta Corp. v. Amdocs Mgmt.*, 129 F.Supp.3d 1012, 1036 (D. Or. 2015).

The convenience of "key witnesses" is accorded greater weight than "non-key witnesses." *Id.* However, "[t]he convenience of key witnesses who are employees of the defendant requesting transfer is entitled to less weight" than the convenience of non-party witnesses, but the convenience of party witnesses "is still a factor this Court may consider." *Burns v. Gerber Prod. Co.*, 922 F. Supp. 2d 1168, 1173 (E.D. Wash. 2013) (internal citations omitted); *see also Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1147 (C.D. Cal. 2009). ("The convenience of non-party witnesses is a more important factor than the convenience of party witnesses.").

The testimony of an expert witness is generally given less weight. *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1195 (S.D. Cal. 2007); *but see Cont'l Airlines, Inc. v. Am. Airlines, Inc.*, 805 F. Supp. 1392, 1397 (S.D. Tex. 1992) ("It is possible to conceive of a case in which a particular expert is a key witness, or even the key witness," such that the expert's testimony should be given greater weight in the context of a § 1404(a) analysis).

WTC has identified five witnesses, each of whom resides in Delaware. Plaintiffs have identified seven witnesses, including Rogers herself; five of the seven reside in the EDCA, and the other two in the CDCA. Neither Premier nor WTIA have identified any witnesses for purposes of this motion, though the latter has relied on the affidavit of one of WTC's employees.

11

### i. *Plaintiffs' Witnesses*

Key to Plaintiffs' claims is the testimony of Rogers herself: she was responsible for appointing WTC as trustee of the Roen Trust in 2008 as well as for WTC's removal in favor of Premier in 2015. As the primary beneficiary to the Roen Trust, Rogers received communications "regarding the administration of the trust and performance of the trust investments." Since a key claim of Rogers is that she was harmed in the EDCA, the Court expects she will testify regarding WTC's interactions with her and how she was injured by the conduct of each Defendant. However, as a party, her convenience is given less weight for purposes of witness convenience. *Metz*, 674 F. Supp. 2d at 1147.

Steve Baker is "a close personal friend" to Rogers, and is identified as a supporting witness for her claims. Mr. Baker, a resident of Tuolumne County, California, "manages horses on [Rogers'] property," and is regarded as having "personal knowledge of the facts and circumstances involved in this action." In her affidavit, Rogers states that Mr. Baker is "expected to testify on [Rogers'] communications with WTC and WTIA and their wrongful acts and omissions." However, Mr. Baker does not appear to be a beneficiary of the trust, or have any official connection with Plaintiffs' claims beyond his presence on Rogers' property. Mr. Baker may be able to lend support and credibility to the testimony of Rogers, but it appears that much of the substance of Mr. Baker's testimony may be cumulative in nature, as Rogers can speak directly to her interactions with WTC. Thus, without more information, this Court cannot say Mr. Baker is a "key witness," and so his testimony is afforded little weight here.

James Cunningham is an estate planning attorney residing in the EDCA. Rogers asserts that Mr. Cunningham is expected to testify "on the formation and administration of the trust as well as WTC and WTIA's fiduciary obligations previously owed to [Rogers]." However, Cunningham was not hired until *after* Rogers installed Premier as trustee, and so it is unclear how he can testify as to the actual formation of the trust or to WTC's administration between 2008 and 2015. As an expert witness, his testimony would be given less weight. However, considering his testimony in a light favorable to the Plaintiffs (the non-moving party), it is possible Cunningham is a witness "not specifically retained for litigation but nonetheless [one who] may provide expert

testimony," such that his testimony should be given more weight than it might a traditional expert.[4]

The same issue holds true for the two "wealth advisors," John Lindsey and Christina Lindsey Orta, of Lindsey & Lindsey, who reside in Westlake Village, California (in the CDCA) and who were also hired after WTC's removal as trustee. Rogers contends Mr. and Mrs. Lindsey are both "expected to testify on WTC and WTIA's management of [Rogers'] assets," and it is again unclear from Rogers' affidavit what the substance of this testimony will be beyond their expert analysis of Defendants' management decisions. Taking their testimony in a light favorable to the non-moving party, the Court affords these two more weight than it might a traditional expert. *Costco*, 472 F. Supp. 2d at 1195; *Cont'l Airlines,* 805 F. Supp. at 1397. However, from the description provided in Rogers' affidavit, Mr. and Mrs. Lindsey appear to be providing cumulative testimony, as each appears to be expected to testify to the same subject. The Court will treat this pair as one source for purposes of this motion. *See Bloom v. Express Servs.*, 2011 U.S. Dist. LEXIS 43429, *8 (N.D.Ca. 2011) (disregarding apparent cumulative testimony when "considering the number, materiality, and importance of each litigant's non-party witnesses" for purposes of a § 1404(a) analysis).

Finally, Rogers states she expects to call both Chris Mann and Kriss Ann Mann of Mann, Urrutia, Nelson & Associates, a CPA firm located in the EDCA. Rogers hired Mr. and Mrs. Mann in 2015 after removing WTC as trustee, but unlike the "wealth advisors" and "estate planning attorney," it is clear the Mann's appear to have personal knowledge of WTC's conduct after they were removed from the trusteeship. Plaintiffs contend Mr. and Mrs. Mann are each "expected to testify on WTC and WTIA's late disclosure of K-1 filings and other tax related errors," a point of contention in Plaintiffs' lawsuit and therefore highly relevant to Plaintiffs' case. However, like the Lindsey's, Plaintiffs have not identified how each of the Mann's will offer testimony that differs from the other, and so the Court will treat Mr. and Mrs. Mann as one witness for purposes of this analysis. *See id*.

---

[4] See, e.g., *Burreson v. BASF Corp.*, 2014 WL 4195588, at *7 (E.D. Cal. Aug. 22, 2014) (classifying various experts "in the management and cultivation of crops" as "non-retained experts").

### ii. Defendants' Witnesses

Christopher Sullivan, an employee of Wilmington Trust,[5] served as the "Investment Advisor" to the Roen Trust. Mr. Sullivan states that he has personal knowledge of, among other things, the "investment decisions, tax computations and preparations, and the compilation and distribution of information by [WTC]," and therefore, appears to be a "key witness." However, as a current employee of WTC, his convenience is given less weight. *See Burns v. Gerber Prod. Co.*, 922 F. Supp. 2d at 1173.

Also "key" to WTC's defense is Tonia Gamble-Kennedy, WTC's "relationship manager" and principal point of contact with Rogers. From Mr. Sullivan's affidavit, it appears that Ms. Gamble-Kennedy is expected to testify as to the "standard communications with [Rogers] regarding the administration of the trust and performance of the trust investment."

WTC also identifies three individuals—Regina Watson, Emily Windfelder, and Susan Nickel—who "worked in [WTC's] Delaware offices and were significantly involved in the administration of the Roen Trust." However, beyond this statement, WTC does not identify how each person's testimony will differ from the others, and so the Court will treat the testimony of each as one witness for purposes of this analysis. *See Bloom*, 2011 U.S. Dist. LEXIS 43429 at *8.

### iii. Conclusion as to the convenience of the witnesses

On balance, it appears that this factor neither weighs for or against transfer. Each party has identified one "key witness" for which there are no mitigating circumstances—The Mann's and Gamble-Kennedy. The convenience of Rogers, as a party, and Sullivan, as an employee of a party, receive less weight. The testimony of Cunningham and the Lindsey's will be key to Plaintiffs' case, but the weight of each is reduced slightly due to their seeming expert status and cumulativeness. The same goes for the three WTC ex-employees, whose weight is reduced due to apparent cumulativeness. Thus, the scales for this factor appear to balance out, substantially reducing the weight given to this factor. *See id.*

---

[5] This Court is unsure if Sullivan is an employee of WTC or WTIA, as his affidavit was used to support both WTC's motion to transfer under § 1404(a) as well as WTIA's 12(b)(2) and 12(b)(6) motions. Further, Sullivan in his affidavit for WTC identifies himself as "Wilmington Trust's Investment Advisor," which is of course the also the name for Defendant WTIA. For purposes of this motion, the Court will treat Sullivan generally as a "defense witness."

14

13. *Local Interest in the Controversy*

With respect to the EDCA, Rogers is currently a resident of Tuolume County, California, is over the age of 65, and received the bulk of the communications between her and WTC in the EDCA. Finally, the appointment of the successor trustee, Premier, occurred in the EDCA. Based on these considerations, the EDCA has a local interest in this case.

With respect to the District of Delaware, WTC is incorporated and has its principal place of business there. Many if not all of the investment decisions made by WTC occurred in Delaware, and to the extend WTIA participated in those decisions, WTIA's conduct would have either occurred in Delaware or in its home state of Maryland. Further, the Delaware Court of Chancery partitioned both the 1934 Trust and the 2004 Trust, creating the trust at issue in this case. Given the allegations in Plaintiffs' petition, the District of Delaware has a local interest in this case as well. On balance, this factor weighs neutral.

14. *Court Congestion of the Forums*

As of March 31, 2017, the EDCA had 7,413 civil cases pending, while the district of Delaware had 2,056 civil cases pending. *See* Table–U.S. District Courts–Combined Civil and Criminal Cases Filed, Terminated, and Pending, by Jurisdiction (March 31, 2017).[6] The EDCA has a total of 9 full time and senior district judges, while the District of Delaware has a total of 4 full time and senior district judges.[7] These statistics show that the EDCA more congested than Delaware – while the EDCA has double the number of judges, it also has nearly four times the number of pending cases. Thus, Delaware is "less congested" than the EDCA, and therefore this factor weighs in favor of transfer to Delaware.

15. *Feasibility of Consolidating Other Claims*

The parties have not identified any claims that may be related to or could be consolidated with this case. Therefore, this is a neutral factor.

---

[6] These tables can be found at: http://www.uscourts.gov/statistics-reports/federal-judicial-caseload-statistics-2017-tables.

[7] The number of full time and senior judges in each district can be found at each district's website: http://www.caed.uscourts.gov, and http://www.ded.uscourts.gov.

*Conclusion*

Factors 4, 6, 7, 9, 11, 12, 13, and 15 are neutral. Of the remaining factors, only one—Plaintiffs' choice of forum—weighs against transfer. Factors 1, 2, 5, 8, 10 and 14 each weigh in favor of transfer to Delaware, as the Roen Trust was created and managed there, the bulk of the administrative documents are in Delaware, and Plaintiffs' claims focus mainly on WTC and WTIA's management of the trust. The Court is acutely aware of Rogers' age and receipt of information from WTC over the years, but without more tying her cause of action to the EDCA, cannot say that the administration of justice requires the case remain here. Therefore, this case will be transferred to the District of Delaware.

**II.    Motions to Dismiss under Rules 12(b)(2) and 12(b)(6)**

WTC contemporaneously filed a Rule 12(b)(6) motion to dismiss with its § 1404(a) motion to transfer, and WTIA filed a motion to dismiss under both Rules 12(b)(2) and 12(b)(6). The Court expresses no opinion on the merits of these motions, but administratively dismisses them without prejudice; the parties may raise these issues in Delaware if they so choose.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to transfer to the District of Delaware (Doc. 12) is GRANTED;
2. Defendant WTC's motion to dismiss pursuant to Rule 12(b)(6) (Doc. 13) and Defendant WTIA's motion to dismiss pursuant to Rules 12(b)(2) and 12(b)(6) (Doc. 10) are DENIED without prejudice for administrative purposes; and
3. Pursuant to 28 U.S.C. § 1404(a), this matter is TRANSFERRED forthwith to the District of Delaware.

IT IS SO ORDERED.

Dated:   January 18, 2018

SENIOR DISTRICT JUDGE